KNOLL, Judge.
This strict liability action involves the fall of a United Parcel Service (UPS) delivery man on the front steps of a commercial building. At the time of the fall, a contractor had detached the steps so that vinyl siding could be installed on the exterior of the building.
Curtis J. Paul, the delivery man, and his wife, Janet T. Paul, brought suit only against the owner of the building, Virginia L. Jackson, and her general liability insurer, Royal Insurance Company, for personal injuries Paul received. At the end of the presentation of Paul’s evidence, the trial court granted the motion of Jackson and Royal for directed verdict, and removed the case from the jury.[1]
The Pauls contend that the trial court erred in: (1) its misapplication of Louisiana’s laws on strict liability, particularly the provisions of LSA-C.C. Art. 2322, dealing with “damage caused by ruin of a building”; (2) directing verdict for Royal at the close of plaintiffs’ case; and, (3) failing to direct verdict in favor of plaintiffs on the issue of liability. We affirm.
FACTS
The facts of this case are not disputed and can be succinctly stated. Jackson was the owner of the property where Paul fell. At the time of the accident, Steven LaCaze, a contractor not named as a defendant in this action, had detached the steps to facilitate *1176 the installation of vinyl siding. There were no signs, flagging or similar warning devices in place to alert that the steps were not attached to the building. As Paul carried packages to the office supply business, he did not notice that the outside, wooden steps were detached, and he fell forward onto the porch when he ascended. Jackson, the property owner, had not detached the steps and she did not control the siding installation.
STRICT LIABILITY
The Pauls contend that the trial court incorrectly determined that the laws of strict liability were inapplicable to the facts presented. They argue that the trial court misapplied the law of strict liability as enunciated in LSA-C.C. Art. 2822 and 2817.
LSA-C.C. Art. 2322 makes the owner of a building strictly liable for the damage suffered by any person who is injured, while rightfully inside or outside the building, in an accident occasioned by the owner’s neglect to repair the building or from a vice (defect) in its original construction. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981).
In Temple v. General Insurance Co. of America, 306 So.2d 915 (La.App. 1st Cir.1974), writ denied, 310 So.2d 643 (La.1975), the First Circuit stated at page 916:
“This article [Art. 2322] obviates the necessity of an injured party having to prove ‘fault’ upon the part of an ‘owner’ or those for whom said owner is answerable. However, the strict liability under Article 2322 is not purely absolute because it arises subject to limiting predicatory language which establishes an owner’s responsibility only when the ‘ruin’ occasioning the damages is caused by ‘neglect to repair it’ or by a ‘vice in its original construction.’”
In the case sub judice, we find that the trial court was correct in not finding Jackson and Royal strictly liable under Art. 2322. Louisiana jurisprudence is firmly established that Art. 2322 does not apply to the repair/construction of a building. A building under repair is not a ruin. Temple, supra; see also, Green v. Popeye’s Inc., 619 So.2d 69 (La.App. 3rd Cir.1993) and Herron v. Lincoln Property Co., 525 So.2d 1189 (La.App. 5th Cir.1988). There is no evidence that the wooden steps in the present case had a defect in its original construction or that the owner had neglected to repair the structure.
The Pauls next contend that the trial court erred in not finding strict liability under LSA-C.C. Art. 2317 which provides, in pertinent part:
“We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.”
A plaintiff who attempts to impose liability under Art. 2317 on the custodian of a defective thing must prove: (1) the thing had a vice or defect; (2) the defect presented an unreasonable risk of harm to others; (3) the thing was in defendant’s custody; and, (4) damage was caused by the defect. Epps v. Society of The Holy Family, 583 So.2d 1216 (La.App. 4th Cir.1991). If any one of these elements is missing, the plaintiff’s strict liability claim falls.
A defect for the purposes of Art. 2317 is a flaw or condition of relative permanence inherent in the thing as one of its qualities. Boudreaux v. Farmer, 604 So.2d 641 (La.App. 1st Cir.1992), writs denied, 605 So.2d 1373, 1374 (La.1992). A temporary condition may constitute a hazard, but it does not constitute a defect as contemplated by Art. 2317. Id.
After carefully reviewing the record, we find no error in the trial court’s determination that the Pauls failed to prove liability under Art. 2317. Although the trial court’s discussion went off on a tangent on whether the detached steps were in or on the premises, a determination we do not find necessary to reach, we nonetheless conclude that the Pauls’ evidence preponderates that the detachment of the steps was a temporary condition and did not constitute a defect under *1177 Art. 2317 and its interpretative jurisprudence. Boudreaux, supra.
The law relative to directed verdicts is stated in LSA-C.C.P. Art. 1810 which provides:
“A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.”
Likewise, the jurisprudence interpreting Art. 1810 is well established that the standard for granting a directed verdict mirrors the standard for granting a summary judgment. Reilly v. Dynamic Exploration, Inc., 571 So.2d 140 (La.1990).
Applying Art. 1810 and the underlying jurisprudence, we find that considering the facts the Pauls presented in light of the law of strict liability outlined above, the trial court did not abuse its discretion when it granted the motion for directed verdict urged by Jackson and Royal.
Finally, in closing, we note that in order for the Pauls to succeed in the trial court on an alternative negligence theory, it was incumbent upon them to show that Jackson had personal charge or exercised control over the work of her contractor. See, Pilgram v. Williford Roofing & Sheet Metal, 488 So.2d 269 (La.App. 3rd Cir.1986), writ denied, 492 So.2d 1222 (La.1986). Although plaintiffs generally alleged the negligence of Jackson in their petition, the record does not establish facts by a preponderance of the evidence which support this allegation.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Pauls.
AFFIRMED.
SAUNDERS, J., dissents with reasons.

. UPS's worker's compensation carrier, Liberty Mutual Insurance Company, intervened in the trial court. However, since Liberty has not filed an appeal, it is not before us and the judgment is final as to it.